IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NELSON CALDERSON,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD MEDICAL SERVICES, | ) |
| ALISA DEARMOND, | ) Case No. 21-cv-1061-DWD |
| DR. BUTALID, | ) |
| ZIMMER, | ) |
| DR. SIDDIQUI, | ) |
| MOLDENHAUER, | ) |
| WILLS, | ) |
| JEFFREYS, | ) |
| IDOC, | ) |
| CRAIN, | ) |
| BERT, | ) |
| JANE DOE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Nelson Calderson, an inmate of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Docs. 1, 10). Plaintiff alleges that on December 4, 2019, he suffered a heart attack at Menard. He alleges that in the six months leading up to his heart attack he received inadequate medical care, which he suggests caused his heart attack. He seeks compensatory relief.

---

[1] Plaintiff indicated he is also known as Nelson Calderon.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). However, conclusory statements and labels are insufficient. Enough facts must be provided to state a claim for relief that is plausible on its face. *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013). The pleading standard does not require detailed factual allegations, but it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### The Complaint

Plaintiff alleges that in June of 2019 he experienced two "explosions" in his head, so he submitted a request for healthcare. (Doc. 10 at 8).[2] In the request for healthcare,

---

[2] Plaintiff's Amended Complaint is a few pages longer than the original, and it adds claims about a class action lawsuit in the Northern District of Illinois—*Lippert v. Jeffreys*, 10-cv-4603 (N.D. Ill. 2010). (Doc. 10). The Court reviewed the Amended Complaint as the operative pleading because it contained additional claims and was otherwise identical to the original. The Court also reviewed the exhibits appended to the original, because the exhibits were not attached to the Amended Complaint. (Doc. 1 at 19-34).

Plaintiff notified medical staff that he had been experiencing headaches, dizziness, and lightheadedness. On June 20, 2019, Plaintiff believes he was seen by Dr. Siddiqui and Nurse Alfaro, who referred him to an MD/NP call line. On June 23, 2019, he was seen by Dr. Butalid for complaints of lightheadedness, so Butalid scheduled him for tests. On June 26, 2019, he had a lab draw and on June 29, 2019, he had an EKG.

On July 4, 2019, Plaintiff saw Defendant Zimmer for a follow-up on his condition and his labs. Zimmer apparently recorded that he continued to be dizzy at times and he had a poor diet and high blood pressure. On July 31, 2019, Plaintiff saw Dr. Siddiqui who noted his high blood pressure, discussed treatment, and scheduled him for the Hepatitis C clinic.

On December 4, 2019, Plaintiff began to experience chest pain and was escorted to the sick call line. Plaintiff told Defendant Dearmond that he had been experiencing chest pain the last two days, and that they pain was now a "10" on a scale of "1 to 10." He reported that the pain radiates down both arms and that nothing alleviates it. Dearmond allegedly told him he was suffering from heartburn or indigestion and said she would get him medication for the issue. Despite his insistence that his pain was ongoing, Dearmond ended the visit. Plaintiff alleges that Dearmond did not have proper training to treat a condition as serious as his, and she treated his complaints of symptoms as lies per a Wexford policy. Later that same day Plaintiff's pain intensified. He felt "electric shocks" up and down both arms, he was breathless, he sweat profusely, and he had chest pain. Plaintiff notified a correctional officer who went to tell the sergeant. In the interim, his condition worsened, so fellow inmates called out for help. The correctional officer

and sergeant returned, and approximately ten minutes later Defendant Bert (a nurse) came to his cell. Bert was aware of Plaintiff's hypertension. At Bert's direction, Plaintiff was escorted to the medical unit where he received an EKG. The EKG revealed that he had suffered a heart attack. Plaintiff alleges that Defendant Moldenhaeur also noted his condition. After the EKG, Plaintiff was rushed to a local hospital.

At the hospital, Plaintiff got two stints for his heart condition. On January 23, 2020, Plaintiff had a quadruple bypass. Plaintiff alleges that after he had recovered from surgery, staff informed him that he had suffered a 'massive heart attack' and that he was lucky to be alive.

Plaintiff claims that while he was recovering in the healthcare unit at Menard, he received a copy of his June 2019 EKG. Plaintiff showed the EKG to a nurse who told him that someone should have followed up on the EKG readings earlier because the readings "showed that 'something' was going on with Plaintiff's heart that could have led up to Plaintiff suffering a massive heart attack six months later." (Doc. 10 at 12-13).

Plaintiff claims that prior to his heart attack, he notified Menard medical personnel that he had been experiencing headaches, dizziness, lightheadedness and shortness of breath. Plaintiff alleges that the defendants were deliberately indifferent to his serious medical condition, and that their indifference ultimately caused him to suffer a serious heart attack. Plaintiff additionally alleges that Defendant Wexford contributed to the harm he suffered because they have an unwritten policy of depriving inmates of proper medical treatment in order to save money. (Doc. 10 at 13).

Plaintiff alleges that the defendants' actions violated IDOC policies.

In the amended complaint, Plaintiff added allegations about class action litigation in *Lippert v. Jeffreys*, 10-cv-4603 (N.D. Ill. 2019). Plaintiff claims that he is a class member in that litigation, and that the litigation put Defendants Wexford, Siddiqui, Wills, and Jeffreys on notice of the inadequacy of healthcare in the IDOC. Specifically, Plaintiff alleges that Wexford has deliberately understaffed Menard, which left his high blood pressure untreated. Plaintiff claims that he was never warned about the severity of high blood pressure or the fact that if left untreated it could cause a stroke or heart attack. Plaintiff further alleges if he had known of the risks, he could have requested better care. He also claims that medical staff are inadequately trained. As to the care he received for his heart attack, Plaintiff claims that Defendant Dearmond followed a Wexford policy of treating inmates like they are lying about their ailments. (Doc. 10 at 19).

Plaintiff alleges that Defendants Jeffreys, Wills, and Siddiqui are responsible for ensuring adequate medical care for inmates. He claims that these three failed to provide adequate care at Menard, which resulted in his heart attack.

Based on the allegations in the Complaint, the court designates the following Counts:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Defendants Dearmond, Butalid, Zimmer, Siddiqui, Moldenhauer and Bert for their treatment of Plaintiff's chest pain and heart attack**
>
> **Count 2:** **Eighth Amendment deliberate indifference for their oversight of medical services at Menard against Defendants Wills, Jeffreys, and Crain; and**

> **Count 3:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. and Siddiqui for the alleged policy or practice that harmed Plaintiff.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Twombly*, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Discussion

Claim 1 is adequate to survive initial review against all named defendants. Plaintiff alleges that each of these individuals participated in the direct care for his ongoing chest pain, or on the day of his heart attack, so he can maintain an Eighth Amendment claim for deliberate indifference to a serious medical need against these parties.

In Claim 2, Plaintiff alleges that Wills and Jeffreys were put on notice that the medical care at Menard was inadequate by an ongoing class action lawsuit, and they failed to address the medical care issues. Plaintiff also names Defendant Crain, the healthcare unit administrator at Menard, but he does not have factual allegations particularized to Crain in the complaint. In order to hold an individual personally liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 720 (7th Cir. 2001). Section 1983 does not authorize *respondeat superior* or "supervisory liability." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th

Cir. 2011). Section 1983 creates liability only for a defendant's personal actions or decisions. *Id.* A medical director sued under § 1983 cannot be held liable absent personal involvement. *Smith v. Rohana*, 433 Fed. App'x 466, 469 (7th Cir. 2011); *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010) (a supervisor must know about and personally be involved in unconstitutional treatment to be held liable for inadequate care, mere supervisory status does not make a defendant responsible). Here, beyond the allegation that a class action lawsuit exists concerning the state of medical care in the IDOC, Plaintiff has not alleged how these individuals personally acted to cause him harm. The general responsibility for oversight of a correctional facility does not give rise to liability for deliberate indifference to a medical condition. There are no allegations that these defendants were made aware of Plaintiff's personal need for medical care and that they failed to act. Accordingly, the Court will dismiss Claim 2 as insufficiently pled.

Claim 3 relates to a policy or custom held by Defendant Wexford and implemented by Defendant Siddiqui. Wexford, a private corporation, cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th

Cir. 2021). In other words, a plaintiff must show that "systematic and gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Here, Plaintiff has specifically alleged that Defendants Wexford and Siddiqui maintain a policy or custom that prevented medical staff from giving him adequate care. He alleges that Wexford has a policy of denying treatment to save money, and that they have a policy of assuming inmates are lying about medical ailments in order to refuse treatment. He also alleges that they systematically understaff the prison and allow nurses with inadequate training to address serious situations. Plaintiff alleges that Siddiqui is responsible for the local implementation of Wexford's policies, so he is equally responsible for these issues. At this juncture, the allegations are sufficient to survive review, so Claim 3 will proceed against Wexford.

Plaintiff discusses a "Jane Doe" defendant, but he also identifies Jane Doe as Alisa Dearmond in his complaint. (Doc. 10 at 3-4). There are no freestanding claims against any other Jane Doe, so Jane Doe will be dismissed without prejudice.

Plaintiff also alleges that IDOC policy was violated by events that give rise to this lawsuit. Regardless of whether IDOC policy was actually violated, this allegation does state a claim under § 1983 because a § 1983 claim requires the assertion of a federally

protected right, and the enforcement of a prison's own policies does not give rise to a federal protected right. *See e.g. Anderson v. Wexford Health Sources, Inc.*, 2021 WL 1966085 *1, *3 (S.D. Ill. 2021) (violations of IDOC policy do not state a § 1983 claim). Accordingly, this allegation does not state a claim.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 10) survives initial screening as described above against Defendants Dearmond, Dr. Butalid, Zimmer, Dr. Siddiqui, Moldenhauer, and Bert. Claim 3 survives review against Wexford Health Sources, Inc. and Siddiqui. Claim 2 will be **DISMISSED** without prejudice as to Defendants Wills, Jeffreys and Crain. Because Claim 2 was the only claim against these parties, the Clerk shall **TERMINATE** Wills, Jeffreys and Crain. The Clerk is also **DIRECTED** to **TERMINATE** Jane Doe because there are no freestanding claims against this party. Although Plaintiff had sufficient funds to pay his filing fee in this case, the Court recognizes that his financial status is similar to that of an indigent inmate, and so the Court will provide service of process on his behalf.

The Clerk of Court is **DIRECTED** to prepare for Defendants Dearmond, Dr. Butalid, Zimmer, Dr. Siddiqui, Moldenhauer, Bert, and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint and Amended Complaint (Docs. 1, 10), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days

from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a transfer or other change of address occurs.  Failure to comply with this

order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

Dated: March 4, 2022

DAVID W. DUGAN
United States District Judge

Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.