IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NELSON CALDERSON, B03005, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| ALISA DEARMOND, | ) Case No. 21-cv-1061-DWD |
| DR. BUTALID, | ) |
| DR. SIDDIQUI, | ) |
| ZIMMER, | ) |
| MOLDENHAUER, | ) |
| E. BERT, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Nelson Calderson, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Hill Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center ("Menard"). Plaintiff claims that Defendants Dearmond, Butalid, Zimmer, Siddiqui, Moldenhauer, and Bert were deliberately indifferent to his medical needs, which led him to suffer a heart attack in December of 2019 (Count 1), and Defendants Siddiqui and Wexford maintained a policy or custom that condoned the situation (Count 3). (Doc. 13 at 5-6). All defendants other than Bert and Dearmond have moved for summary judgment (Doc. 62) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation

Reform Act, 42 U.S.C. § 1997e(a). Plaintiff responded. (Doc. 66). The Motion (Doc. 62) will be granted in part, and denied in part, and this case will proceed to merits discovery.

## BACKGROUND

In the Amended Complaint (Doc. 10), Plaintiff alleged that he had symptoms including chest pain and dizziness beginning in June of 2019. In June and July of 2019, he saw Drs. Siddiqui and Butalid, as well as Zimmer related to his symptoms. On December 4, 2019, Plaintiff reported chest pain and was escorted to the sick call line. He was seen by Nurse Dearmond, who believed he had heartburn or indigestion, so she promised medication and ended the visit. Later that day, Plaintiff's pain intensified, and he was seen by Bert at his cell, and also Moldenhauer in the healthcare unit. Plaintiff was sent to the emergency room, and it was determined that he suffered a heart attack which subsequently required surgery.

After initial review under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on two claims:

> Claim 1:   Eighth Amendment deliberate indifference claim against Defendants Dearmond, Butalid, Zimmer, Siddiqui, Moldenhauer, and Bert for their treatment of Plaintiff's chest pains and heart attack; and
>
> Claim 3:   Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., and Siddiqui for the alleged policy or practice that harmed Plaintiff.

(Doc. 13 at 5-6). Defendant Bert withdrew the affirmative defense of failure to exhaust (Docs. 60, 61), and all other defendants filed a motion for summary judgment (Doc. 62.)

## FINDINGS OF FACT

The parties agree that Plaintiff filed just one grievance related to this lawsuit on December 20, 2019—grievance number 323-12-19. (Doc. 63-2 at 25-26). In the grievance, Plaintiff specifically complained about Dearmond's[1] actions at nurse sick call on December 4, 2019, and he complained more generally of the care he received in the months leading up to his heart attack. On April 8, 2020, the grievance officer recommended that his grievance be denied. (Doc. 62-3 at 23-24). The grievance officer's response included a chronical of Plaintiff's care from June of 2019 to December of 2019, with specific mentions of care by Dr. Butalid, Dr. Siddiqui and Zimmer in June and July of 2019. The response also noted that Plaintiff was seen by Bert at nurse sick call on December 4, 2019, and that Moldenhauer saw him at the HCU ER (presumably this is the healthcare unit emergency area). The grievance counselor noted that, "the HCU did not receive a written request from the offender regarding complaints of dizziness, headaches, or chest pains after starting prescribed HCTZ medication on 08/02/19. Offender should utilize nurse sick call protocol if any further issues." (Doc. 63-3 at 24).

Plaintiff appealed to the Administrative Review Board. (Doc. 63-2 at 10). Upon review of his appeal, the ARB concluded "other than the 12/4/19 incident, rest of grievance fails to meet DR 504.810. (*Id.*)

---

[1] In the grievance it appears he referred to Dearmond as the "duty nurse" on December 4, 2019, for sick call, (Doc. 62-3 at 25-26) but in his complaint he appears to clarify that the "duty nurse" he first saw on December 4 was Dearmond (Doc. 10 at 9).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving."

*Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

The Defendants seek summary judgment for failure to exhaust as to Claim 1 on behalf of Defendants Siddiqui, Butalid, Zimmer, and Moldenhauer. They argue that Plaintiff's December 4, 2019, grievance was untimely and thus failed to accomplish exhaustion against them. Plaintiff argued in response that, because the grievance office responded to his grievance on the merits, he properly exhausted his claims against these parties even if his grievance was technically untimely concerning events in June and July of 2019. The Court will consider Siddiqui, Butalid, and Zimmer separately from Moldenhauer.

As to Siddiqui, Butalid and Zimmer, it is undisputed that these three played individual roles in Plaintiff's care from June 2019 to July or August of 2019 when he was given a prescription for HCTZ (as noted in the grievance response). (Doc. 63-2 at 24). Plaintiff did not file any grievances about this care until December of 2019, and he readily admits he did not do so because "he wasn't planning or intending to file a lawsuit pertaining to his previous medical treatment." (Doc. 66 at 3). The Menard Grievance

Office chronicled the care these providers gave in response to Plaintiff's grievance, but then the ARB refused to consider that course of care because the underlying grievance about it was untimely. Plaintiff's situation falls squarely into a situation that has been considered in this District, but that has not been explicitly ruled upon by the Seventh Circuit. The question is—if the prison considered his grievance on the merits regardless of timeliness, but then the ARB invoked the timeliness rule and did not rule on the merits of his grievance, did Plaintiff exhaust his claims?

The Court finds that Plaintiff has not properly exhausted his grievance against Defendants Siddiqui, Butalid, and Zimmer for the individual role in treating his conditions in the Summer of 2019. In so finding, the Court adopts the rationale explained in *Gara v. Kelley*, 2012 WL 3683559, * 6 (S.D. Ill. 2012). "[T]he ARB's denial of an inmate's grievance on purely procedural grounds means that 'the plaintiff has failed to exhaust his administrative remedies and so he must go back and exhaust. […] The ARB should have the same chance as institution-level officials to address any potential policy changes or internal problems before litigation arises." Under the *Gara* Court's reasoning, if a prison reviews a grievance on the merits, but then the ARB clearly deems the grievance untimely, Plaintiff has still failed to exhaust his remedies because his untimeliness ultimately did not provide the whole grievance chain (up to the ARB) with the opportunity to timely address the issues raised in the grievance.

This rationale is particularly suited to the facts of Plaintiff's situation. He received some care for his symptoms in June and July of 2019 from Zimmer, Butalid, and Siddiqui, and then he waited to grieve the outcome of his appointments until after he suffered a

heart attack. Short of time travel, neither these defendants nor the institution had timely notice that Plaintiff's care in the summer was insufficient, so there was no opportunity to provide supplemental or different care to avert the heart attack that later occurred. The outcome for Plaintiff is regrettable, but a regrettable outcome does not change the requirements of the grievance system, which mandate a Plaintiff to initiate a grievance within 60 days of an incident. The ARB held that Plaintiff failed to do that as to care in June or July of 2019, and that finding translates to a failure to exhaust against these Defendants. Plaintiff's citation to *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) does not change the analysis because that case was factually different. In *Conyers*, both the prison AND the ARB considered an untimely grievance on the merits, so the Seventh Circuit found that the untimeliness did not prevent all levels of the grievance procedure from adequately considering the issues presented. Plaintiff's situation is unlike *Conyers*, for the exact reasons outlined in *Gara*, so like the *Gara* Court, this Court finds that Plaintiff failed to properly exhaust administrative remedies.

The situation for Moldenhauer is different. It appears undisputed from the grievance documentation and Plaintiff's factual allegations, that he saw Moldenhauer on December 4, 2019. The Defendants argue that Plaintiff failed to exhaust as to Moldenhauer, but they provide no additional reasoning that differentiates Moldenhauer from Zimmer, Siddiqui or Butalid. This is confusing because there is no record that Moldenhauer was involved in the treatment in June or July of 2019. It appears Moldenhauer was only involved on December 4, 2019. The Defendants did not move for summary judgment on behalf of Dearmond or Bert—who both saw Plaintiff on December

4, 2019, and who were both also mentioned in the December 20, 2019, grievance. Because the record contains no factual support to dismiss the claim against Moldenhauer, which was clearly discussed in the exhausted portion of the December 20 grievance, the Court will deny summary judgment as to Moldenhauer.

Turning to Claim 3, Defendants Siddiqui and Wexford Health Source, Inc. argue that Plaintiff failed to exhaust his policy or practice claim because he did not make any mention of a constitutionally deficient policy or practice in his grievance. Plaintiff does not squarely address this argument in his response, though he generically asserts that he exhausted his administrative remedies as thoroughly as he could, and he seeks denial of summary judgment for failure to exhaust on this claim. In his *Monell* claim, Plaintiff alleges that Wexford, and its local policy maker (Dr. Siddiqui), caused him harm by failing to adequately train and staff the healthcare unit, by instructing staff to disbelieve inmates about their symptoms, and by attempting to cut costs by denying or delaying treatment. As with the arguments surrounding Claim 1, the issues concerning exhaustion of Claim 3 also fall into a gray area that has not been squarely addressed by the Seventh Circuit. Is a prisoner required to raise a *Monell* policy or practice claim via the IDOC grievance procedure prior to raising the claim in litigation?

This issue was recently considered and resolved in *Daval v. Zahtz*, 2021 WL 2072127, *8 (N.D. Ill. 2021). Specifically, the *Daval* Court noted that:

> [N]othing in the text of IDOC grievance process instructs inmates to complain about specific policies or practices. Indeed, the grievance procedures do not even contemplate *Monell* claims. *See* 20 Ill. Admin. Code 504.800 *et seq*. Nothing in the Illinois Department of Corrections regulations require an inmate to meet a *Monell* pleading standard—and with good

> reason. Inmates will know what happened to them. It would be unreasonable for an inmate to know—and then basically plead—a policy, custom, or practice by Wexford. Furthermore, in referring to "the incident, occurrence or problem," the grievance process seemingly applies to individual complaints of an inmate, instead of a widespread custom or practice that affects more than just that inmate (as contemplated by claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). § 504.810(a). Lastly, the grievance process is further focused on complaints against individual persons rather than widespread customs or practices against a corporation precisely because it asks for "the name of each person" involved or "as much descriptive information about the individual as possible." § 504.810(c). Thus, the text of the IDOC grievance process does not require inmates to list any specific widespread practices or customs on the grievance form. If Illinois policymakers expect state inmates to do more, then creating those procedures is up to them, not the courts. "Whatever temptations the statesmanship of policy-making might wisely suggest, the judge's job is to construe the statute—not to make it better." *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (quoting Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 533 (1947)).

*Id.* Confronted with the same argument that Wexford raises in this case, the *Daval* Court concluded that an inmate is not required to explicitly exhaust a *Monell* claim to raise it in federal litigation. This Court agrees with the rationale set forth in *Daval*, and thus it concludes that Plaintiff did not need to explicitly place his policy or practice claim in his December 2019 grievance to fully exhaust the claim. *See also*, *Loving v. Gomez*, 2022 WL 3026932, *4 (N.D. Ill. 2022) (collecting cases for the proposition that it is well settled that an inmate does not need to name Wexford to exhaust remedies against it); *citing Diaz v. Baldwin*, 2021 WL 1401463, at *3 (S.D. Ill. 2021) (if a Wexford policy or practice is at issue, it is sufficient to grieve medical activities or issues that Wexford would be responsible for).

There are two things worthy of mention. First, the argument often arises that if there is not a claim against an individual Wexford actor, then there cannot be a *Monell* claim. Although the Court found that a claim against Siddiqui for his personal treatment actions was not exhausted, it will still allow the *Monell* claim against Siddiqui for the time-being because Plaintiff contended in his complaint that Siddiqui was a part of the overall training and treatment decisions at Menard as a localized policymaker, and there are still claims against some Wexford providers, so Siddiqui might be involved in that sense. Second, the Court will limit the policy or practice claim to the timeframe defined as exhausted above. It would be disharmonious to allow a policy or practice claim to stretch back to June of 2019, while barring the claims against individual providers in June. Although Plaintiff need not plead an explicitly policy or practice in a grievance, the grievance must be sufficient in content and timing to give the institution notice and a chance to respond. As was previously discussed, a December grievance came too late to address issues from June. Accordingly, the policy or practice claim may proceed against Siddiqui and Wexford only as it relates to events in December of 2019.

In conclusion, summary judgment will be **GRANTED** in **PART** in favor of Defendants Siddiqui, Butalid, and Zimmer on Claim 1. Summary judgment will be **DENIED** on behalf of Moldenhauer on Claim 1. Summary judgment will be **GRANTED** in **PART** as to Defendants Siddiqui and Wexford on Claim 3 to the extent that Plaintiff may only pursue a policy or practice claim related to events in December of 2019. Ultimately, Claim 1 will proceed against Defendants Moldenhauer, Dearmond, and Bert, and Claim 3 will proceed against Siddiqui and Wexford only as to December of 2019.

## DISPOSITION

The Motion for Summary Judgment (Doc. 62) is **GRANTED** in **PART** on behalf of Defendants Siddiqui, Butalid, and Zimmer as to Claim 1, and **DENIED** in **PART** on behalf of Moldenhauer (Claim 1), and Siddiqui and Zimmer (Claim 3).  Claim 1 against Defendants Siddiqui, Butalid, and Zimmer is **DISMISSED** without prejudice for failure to exhaust.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Butalid and Zimmer at the close of this case.  Claim 1 will proceed against Moldenhauer, Dearmond, and Bert, and Claim 3 will proceed against Siddiqui and Wexford limited to December of 2019.  A merits discovery schedule will issue separately.

**IT IS SO ORDERED.**

Dated: January 30, 2023

                                                                                        _____
                                                                                        DAVID W. DUGAN
                                                                                        United States District Judge